STATE of Utah, Plaintiff and Appellee,

v.

Todd ROBINSON, Defendant
and Appellant.

No. 920754–CA.

Court of Appeals of Utah.

Sept. 29, 1993.

Susan M. Denhardt, Salt Lake City, for
defendant and appellant.

David E. Yocum and Kenneth R. Updegrove, Salt Lake City, for plaintiff and appellee.

Before BENCH, RUSSON and GARFF,[1] JJ.

## OPINION

RUSSON, Associate Presiding Judge:

Todd Robinson appeals the circuit court's restitution order entered after he pleaded guilty to (1) making an improper lane change, a class B misdemeanor, in violation of Utah Code Ann. § 41-6-61(1) (1988); and (2) failing to remain at the scene of an accident resulting in an injury, a class A misdemeanor, in violation of Utah Code Ann. § 41-6-29 (1988). We reverse.

## FACTS

At approximately 8:00 p.m. on June 22, 1991, Todd Robinson was driving his vehicle on the northbound Interstate 15 on-ramp from Beck Street in Salt Lake County. While making a lane change, his vehicle struck a motorcycle ridden by Kent Thompson and Justine Coppolino, injuring both riders. Robinson did not stop, but fled the scene of the accident. However, an anonymous tip alerted the police to Robinson, who upon apprehension, admitted his vehicle had struck Thompson and Coppolino's motorcycle. Robinson subsequently pleaded guilty to making an improper lane change and failing to remain at the scene of an accident resulting in an injury.

On November 13, 1991, the circuit court sentenced Robinson to ninety days in jail, but suspended the sentence pending successful completion of probation. As a con-

dition of probation, the circuit court required Robinson to enter into a restitution agreement with Thompson and Coppolino, who had suffered injuries as a result of the accident.[2] Thereafter, Robinson and Coppolino entered into a signed release agreement in which Coppolino released Robinson of any liability in connection with the accident in exchange for $400.[3]

On November 4, 1992, following an August hearing, the circuit court, without considering issues of proximate cause, comparative negligence, or the signed release, ordered Robinson to pay $13,567.80 in restitution, under Utah Code Ann. § 76-3-201 (1990). The order required Robinson to "pay restitution to the Court" at the rate of at least $20 per month. The circuit court also placed Robinson on probation until he completed payment of the ordered restitution. Robinson appeals, arguing that (1) the amount of restitution that the circuit court could impose must be limited to $400, the amount specified in the release signed by Coppolino; (2) the circuit court lacked jurisdiction to extend probation until restitution was paid in full; and (3) the imposition of restitution in this case violates his rights under the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution.[4]

The sole issue presented for review is whether the circuit court properly ordered restitution pursuant to Utah Code Ann. § 76-3-201 (1990).

## STANDARD OF REVIEW

We will not disturb a trial court's order of restitution unless the "trial court exceeds the authority prescribed by law or abuses its discretion." *State v. Twitchell,*

---

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78-3-24(10) (1992).

2. The parties stipulated that Thompson's and Coppolino's medical expenses from the accident totaled $13,567.80, which was the amount that Thompson and Coppolino had received from the Crime Victims' Reparations Trust Fund. *See* Utah Code Ann. § 63-63-11 (1993).

3. Coppolino purported to sign this release for Thompson also, but her attempt was invalid

because there was no evidence that she had any authority to do so. Thus, the release was defective as to Thompson.

4. Robinson additionally argues that the circuit court applied the wrong criteria in ordering restitution under Utah Code Ann. § 76-3-201 (1990), in that it did not consider the rehabilitative and deterrent purposes of restitution. However, given our resolution of this matter on other grounds, we do not address this argument on appeal.

832 P.2d 866, 868 (Utah App.1992) (citations omitted); *accord State v. Snyder*, 747 P.2d 417, 422 (Utah 1987).

## ANALYSIS

Robinson argues that the circuit court improperly awarded restitution under Utah Code Ann. § 76–3–201 (1990) because (1) it did not consider the effect of the release signed by Coppolino, and (2) such award violates his due process rights under the Fifth and Fourteenth Amendments. Further, he argues that the circuit court did not have jurisdiction to enforce fifty-seven years of formal probation.[5] The State responds that the circuit court properly ordered restitution without regard to Robinson's potential civil affirmative defenses. Moreover, the State asserts that under Utah Code Ann. § 77–18–1(8)(a)(ii) (Supp. 1992), the circuit court can maintain bench probation over Robinson until restitution is fully paid, and therefore, jurisdiction was proper.

■ Before this court considers the aforementioned issues, we first address the question of whether a valid restitution order exists. Utah's restitution statute provides, in pertinent part:

> When a person is adjudged guilty of criminal activity which has resulted in pecuniary damages ... the court shall order that the defendant make restitution up to double the amount of pecuniary damages *to the victim or victims* of the offense to which the defendant has pleaded guilty....

Utah Code Ann. § 76–3–201(3)(a)(i) (1990) (emphasis added). Thus, when restitution is proper, the statute explicitly provides that the court order payment of restitution to the victim or victims of the criminal offense. In the case at bar, the restitution order requires payment "to the Court,"

rather than to the victims. It would therefore appear that the restitution order, on its face, is invalid under section 76–3–201(3)(a)(i).

However, Utah's Crime Victims' Reparations Act states, in pertinent part:

> (1) By accepting an award of reparations, the victim automatically assigns to the state all claims against any third party to the lesser of:
>> (a) the amount paid by the state; or
>> (b) the amount recovered from the third party.

Utah Code Ann. § 63–63–22 (Supp.1993). Therefore, when Thompson and Coppolino accepted payment from the Crime Victims' Reparations Trust Fund, they automatically assigned to the State their claims against Robinson, up to the amount received from the fund. Accordingly, when the circuit court ordered Robinson to "pay restitution to the Court," it was, in effect, ordering restitution to be paid to the State, specifically to reimburse the Crime Victims' Reparations Trust Fund. Consequently, the order is not improper on its face.[6]

## The Release

■ Having addressed the validity of the order itself, we now turn to Robinson's arguments. Robinson contends that the release signed by Coppolino serves as an affirmative defense to the restitution order, limiting the amount of restitution the circuit court can impose. The State responds that the circuit court may order restitution without regard to potential civil affirmative defenses. While we do not agree with the State's reasoning, we nonetheless hold that the release in the case at bar is not an affirmative defense.

Under section 63–63–22, victims who have accepted an award of reparations "au-

5. Robinson arrived at this fifty-seven year figure by calculating the period of time necessary to pay off $13,567.80 at $20 per month. However, the State argues that probation will not extend for fifty-seven years because Robinson will be required to increase his monthly restitution payments when he completes his college education since he will then be able to afford a higher payment.

6. However, to avoid confusion in the future, restitution orders should clearly state to whom restitution is to be paid, whether it is the victim or the Crime Victims' Reparations Trust Fund, and not merely order payment "to the Court."

tomatically assign[ ] to the state all claims against any third party." Utah Code Ann. § 63–63–22(1) (Supp.1993). In the case at bar, Coppolino had received reparations from the Crime Victims' Reparations Trust Fund prior to signing the release. By accepting these reparations, she automatically assigned any claim she had against Robinson for that amount or any part thereof to the State, and consequently could not sign a release in that regard. *See id.* Accordingly, the release Coppolino signed was invalid, and Robinson's argument that it serves as an affirmative defense fails.

### Extended Probation

■ Robinson contends that the restitution order extends probation beyond the period allowed for the misdemeanors to which he pleaded guilty, and therefore, the circuit court lacked jurisdiction to enforce the restitution order. The State replies that the circuit court may retain jurisdiction until restitution is paid in full. We agree.

While the maximum formal probation periods for an improper lane change infraction, a class B misdemeanor, and for leaving the scene of an injury accident, a class A misdemeanor, are respectively twelve months and thirty-six months, Utah Code Ann. § 77–18–1(8)(a)(i) (Supp.1992), a court may nonetheless retain jurisdiction for a longer period through bench probation. Utah Code Ann. § 77–18–1(8)(a)(ii) (Supp. 1992) provides:

> If the defendant, upon expiration or termination of the probation period, has outstanding fines or restitution owing, the court may retain jurisdiction of the case and continue the defendant on bench probation or place the defendant on bench probation for the limited purpose of enforcing the payment of fines and restitution.

In the present case, Robinson will not have satisfied the ordered restitution payment at the end of his formal probation period if he pays only the ordered $20 per month. However, this fact does not render the restitution order invalid because, under section 77–18–1(8)(a)(ii), when restitution is owing at the end of the probation period, the circuit court may maintain "bench pro-

bation for the limited purpose of enforcing the payment of ... restitution." *Id.* Thus, the circuit court properly retained jurisdiction to enforce restitution.

### Due Process

■ Finally, we turn to the appropriateness of restitution in traffic cases that involve only negligence, and not criminal intent. Unlike most criminal matters, these traffic cases involve numerous issues that must be considered before it can be determined whether a victim "has suffered pecuniary damages as a result of the defendant's criminal activities." Utah Code Ann. § 76–3–201(4)(d) (1990). Such issues involve, for example, proximate cause, comparative negligence, and affirmative defenses. In the case at bar, these issues were never considered.

"The demands of due process rest on the concept of basic fairness of procedure and demand a procedure appropriate to the case and just to the parties involved." *Holm v. Smilowitz*, 840 P.2d 157, 164 (Utah App. 1992) (quoting *Wiscombe v. Wiscombe*, 744 P.2d 1024, 1025 (Utah App.1987) (quoting *Rupp v. Grantsville City*, 610 P.2d 338, 341 (Utah 1980))). "One of the fundamental requisites of due process is the opportunity to be fully heard." *Id.* (quoting *Wiscombe*, 744 P.2d at 1025). "[E]very significant deprivation, whether permanent or temporary, of an interest, which is qualified as 'property' under the due process clause must be *preceded* by notice and opportunity for hearing appropriate to the nature of the case, absent extraordinary or unusual circumstances." *Worrall v. Ogden City Fire Dep't*, 616 P.2d 598, 601 (Utah 1980) (plurality opinion) (footnote omitted). "[T]he fundamental requisite of due process of law is the opportunity to be heard, a right which has little reality or worth unless one ... can choose for himself whether to contest." *Id.*

In the present case, Robinson was denied the opportunity to be fully heard before being deprived of his property. He never had an opportunity to raise the issues of whether his improper lane change was the proximate cause of the victims' injuries or whether the victims were comparatively negligent. Indeed, when Robinson pleaded

guilty to the traffic violations, he stated, "I'm not convinced the accident was my fault." The issues of fault and proximate cause are crucial in determining damages in a civil case. Likewise, these same issues are crucial in determining whether Thompson and Coppolino have "suffered pecuniary damages *as a result of* the defendant's criminal activities." Utah Code Ann. § 76–3–201(4)(d) (1990) (emphasis added). However, it is unlikely that the victims will ever bring an action in civil court against Robinson because of the compensation that they have already received from the Crime Victims' Reparations Trust Fund. Robinson will likely never have the opportunity to raise the issues of proximate cause and comparative negligence, and thus is denied his due process right to be fully heard. *See Holm,* 840 P.2d at 164. Moreover, even if Robinson is permitted to raise these issues in a civil suit, it will only be *after* a deprivation of his property. *See Worrall,* 616 P.2d at 601. Thus, it is likely that he will never have an opportunity to contest the damages. This is a violation of Robinson's due process rights.[7]

 Despite the fact that the traffic laws of this State are codified within the criminal code, a restitution order will generally be inappropriate in a matter arising from a traffic violation that involves only negligence, and not criminal intent. There are numerous instances wherein a driver can rightfully be cited for a violation of the traffic code, but should not be ordered to pay restitution for injuries arising out of the accident because such violation is not the proximate cause of the accident. Matters of negligence, proximate cause and the amount of resulting damages are best left to civil litigation. Restitution should be ordered only in cases where liability is clear as a matter of law and where commission of the crime clearly establishes causality of the injury or damages. Such is not the case here, where the violation was an improper lane change which did not involve criminal intent and which may or may not have been the proximate cause of the victims' injuries. Accordingly, we reverse.[8]

## CONCLUSION

Based of the foregoing, we reverse the circuit court's order requiring Robinson to pay restitution to the court.

BENCH and GARFF, JJ., concur.

---

7. Additionally, the circuit court's decision to order restitution in this case, which amounts to a taking of Robinson's property, without permitting Robinson to raise issues of proximate cause, comparative negligence, or any affirmative defenses may also violate the open courts provision of the Utah Constitution, which states:

> All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, which shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.

Utah Const. art. I, § 11; *see also Berry v. Beech Aircraft Corp.,* 717 P.2d 670, 675 (Utah 1985) (holding that article I, section 11 "guarantees access to the courts and a judicial procedure that is based on fairness and equality").

8. Additionally, this court questions the propriety of the award of reparations from the Crime Victims' Reparations Trust Fund to Thompson and Coppolino in this case. The Crime Victims' Reparations Act provides:

> In order to be eligible for a reparations award under this chapter:
> (1) The claimant shall be:
>   (a) a victim of criminally injurious conduct;
> ....

Utah Code Ann. § 63–63–11 (1993). Furthermore, the Act's definition of "criminally injurious conduct" specifically excludes:

> conduct arising out of the ownership, maintenance, or use of a motor vehicle except when the conduct:
>   (i) causes personal injury or death with criminal intent; or
>   (ii) constitutes the offense of driving while under the influence of alcohol or any drug.

Utah Code Ann. § 63–63–2(9)(b) (1993). Thus, it appears that Thompson and Coppolino were not "victims" as defined by the Crime Victims' Reparations Act inasmuch as they were not injured as a result of "criminally injurious conduct" because there is no indication that Robinson had criminal intent or was driving under the influence of alcohol or any other drug.