STATE of Utah, Plaintiff and Appellee,

v.

John B. TENNEY, Defendant
and Appellant.

No. 930778–CA.

Court of Appeals of Utah.

March 14, 1996.

Joan C. Watt, Salt Lake City, for Appellant.

Jan Graham, J. Kevin Murphy, Charlene Barlow, and Lynn Nicholas, Salt Lake City, for Appellee.

Before ORME, DAVIS and BILLINGS, JJ.

## OPINION

DAVIS, Associate Presiding Judge:

Defendant John B. Tenney appeals his convictions for twelve counts of selling unregistered securities, twelve counts of securities fraud, two counts of employing unregistered agents, and one count of being an unregistered securities broker, all felonies in violation of Utah Code Ann. §§ 61–1–1, –3, & –7 (1993). We affirm.

## FACTS

From 1986 through 1988, defendant sold stock in a company called "Cellwest" to a number of individuals. Thirteen of those sales form the basis of the criminal charges in this case. In some instances, the sales were facilitated for defendant by Steven Rick Jensen or Steven Bowers; in others, defendant himself sold the stock. The individuals selling stock on defendant's behalf were not registered securities sales agents, nor was defendant a registered securities broker or sales agent. In addition, the Cellwest stock was not registered with the Utah Division of Securities.

The thirteen investors relevant to this case were induced to buy Cellwest stock at roughly two dollars per share through representations by defendant, Bowers, and/or Jensen that the stock would be "going public" or "coming out" on the open market in the immediate future, that the stock's value would increase "substantially," and that defendant would buy back the stock six months

after sale, at the purchaser's option, for five dollars per share. With very few exceptions, neither defendant nor his agents provided the investors with information concerning the length of time defendant had been claiming that the stock would soon be going public, defendant's prior problems with the Securities and Exchange Commission, defendant's bankruptcy, Cellwest's competition, or other material matters.

Cellwest stock did not go public "soon," or, in fact, ever. In addition, after six months had elapsed and investors asked defendant to honor the stock buy-back agreements, he failed to do so in most cases. Disgruntled investors reported defendant's activities to the Utah Attorney General's office, and defendant was tried for numerous securities law violations. Defendant elected to waive counsel[1] and conduct his own defense at trial. The jury ultimately acquitted defendant of two charges and convicted him of the remaining twenty-seven.

### ISSUES

Defendant claims on appeal that: (1) he did not knowingly, intelligently, and voluntarily waive his right to counsel; (2) prosecutorial misconduct during opening argument requires reversal; (3) the trial court committed plain error when it permitted the State's expert witnesses to testify to legal conclusions; (4) the trial court committed reversible error by denying defendant's motion for a new trial due to juror misconduct; (5) the trial court committed reversible error by improperly instructing the jury on the elements of the crimes, failing to adequately define certain terms, and failing to require unanimity as to the elements of the crimes charged; and (6) the trial court erroneously ordered restitution in the amount of $39,000 to Cellwest investor James Zieglowsky.

### ANALYSIS

#### 1. Self–Representation

█ Defendant argues that he did not knowingly, intelligently, and voluntarily waive his right to the assistance of counsel at trial. We review the trial court's factual

findings supporting a knowing and voluntary waiver "under the 'clearly erroneous' standard of Rule 52(a), Utah Rules of Civil Procedure." *State v. Drobel,* 815 P.2d 724, 734 (Utah App.), *cert. denied,* 836 P.2d 1383 (Utah 1991); *accord State v. Bakalov,* 849 P.2d 629, 634 (Utah App.1993). The trial court's legal conclusions derived therefrom are reviewed for correctness. *Bakalov,* 849 P.2d at 634.

█ The right to self-representation is implicitly guaranteed by the Sixth Amendment to the United States Constitution. *Faretta v. California,* 422 U.S. 806, 818–32, 95 S.Ct. 2525, 2532–40, 45 L.Ed.2d 562 (1975). In addition, the right to self-representation is also guaranteed by Utah law. Utah Const. Art. I, § 12; Utah Code Ann. § 77-1-6(1)(a) (1995); *State v. Frampton,* 737 P.2d 183, 187 n. 6 (Utah 1987). However, because the right to self-representation is essentially a waiver of the Sixth Amendment guarantee of assistance of counsel, the decision to waive counsel and proceed pro se must be made knowingly, intelligently, and voluntarily. *See Frampton,* 737 P.2d at 187; *Bakalov,* 849 P.2d at 633; *Drobel,* 815 P.2d at 731–32. This determination necessarily involves consideration of " 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " *Drobel,* 815 P.2d at 732 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)); *see also Frampton,* 737 P.2d at 188.

█ The preferred method for determining whether the defendant opting to proceed pro se understands the risks involved and makes a voluntary and knowing decision to waive counsel is to conduct an in-depth colloquy held on the record between the trial court and defendant. *See Frampton,* 737 P.2d at 187; *accord Bakalov,* 849 P.2d at 633; *Drobel,* 815 P.2d at 732. The colloquy should determine:

"whether defendant has studied law; defendant's experience at self-representation; the charges and possible penalties faced; familiarity with, and the expectation of

---

**1.** Defendant was appointed stand-by counsel, however.

adherence to, procedural and evidentiary rules; a warning that the trial court will not direct or advise the defense; a recommendation against self-representation; and whether the choice of self-representation is voluntary."

*Bakalov*, 849 P.2d at 633 (quoting *Drobel*, 815 P.2d at 732 (discussing *Frampton*, 737 P.2d at 187–88 n. 12)). This colloquy is not mandatory; nonetheless, when employed by the court, it helps show that the decision to waive counsel was knowing and voluntary. *See Bakalov*, 849 P.2d at 633.

■ Defendant acknowledges that a colloquy was held on the record in which it was established that defendant understood: (1) the potential punishment for the charged offenses was over one hundred years of imprisonment plus substantial fines; (2) it was necessary that the rules of evidence and procedure be followed; (3) training and experience were required to provide an effective defense; (4) there was a substantial difference between civil actions, in which defendant had prior experience representing himself, and criminal actions; and (5) that the court strongly recommended that defendant not represent himself. In addition, defendant represented that he had the education and desire to master the rules of evidence and procedure, that he had detailed knowledge of the securities laws, that he understood the meaning of proof beyond a reasonable doubt, and that he understood the court was "more than willing to appoint a lawyer to represent him." Finally, the court appointed stand-by counsel who was available and assisted defendant throughout the trial. Nonetheless, defendant contends that because he was not informed during the colloquy with the court that he would be required to present his testimony in a question and answer format, as opposed to a narrative format, he did not knowingly, intelligently, and voluntarily waive his right to counsel.

This contention is without merit. The record reveals that defendant told the court on the fourth day of trial that he was aware of two modes of presenting his testimony— question and answer, and narrative. He represented that either of these alternatives would be fine with him, but he would prefer narrative. Thus, defendant was aware of the options for presenting testimony in a pro se case and was not particularly troubled by the question and answer format ultimately selected by the court. Additionally, the court permitted defendant to consult with stand-by counsel in order to respond to the State's objections to his questions and afforded him the opportunity to formulate additional questions in order to pursue various avenues suggested by earlier questions. Therefore, even if defendant did not have his first choice in the mode of presenting his testimony, he is unable to establish that any failure of the trial court to advise him of its intention to require question and answer rendered his waiver of counsel invalid.

■ We conclude that defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel. The record establishes that defendant " 'understood the seriousness of the charges ... knew the possible maximum penalty ... was aware of the existence of technical rules and [knew] that presenting a defense is not just a matter of telling one's story.' " *Frampton*, 737 P.2d at 188 (quoting *City of Bellevue v. Acrey*, 103 Wash.2d 203, 691 P.2d 957, 962 (1984) (en banc) (citation omitted)). Moreover, we note that defendant conducted himself ably during trial, making several motions and numerous relatively sophisticated evidentiary objections.

## 2. Prosecutorial Misconduct

■ Defendant argues that the State committed prosecutorial misconduct in its opening argument that so tainted the proceedings as to deprive him of a fair trial. We will reverse a jury verdict on the basis of prosecutorial misconduct if defendant demonstrates that

"[t]he actions or remarks of [the prosecutor] call to the attention of the jury a matter it would not be justified in considering in determining its verdict and, if so, under the circumstances of the particular case, whether the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result."

*State v. Wright,* 893 P.2d 1113, 1118 (Utah App.1995) (quoting *State v. Peters,* 796 P.2d 708, 712 (Utah App.1990) (citation omitted)); *accord State v. Troy,* 688 P.2d 483, 486 (Utah 1984); *State v. Stevenson,* 884 P.2d 1287, 1290 (Utah App.1994), *cert. denied,* 892 P.2d 13 (Utah 1995).

■ The prosecutor began her opening statement by claiming,

> This is a case about innocent, hard-working people who got taken in a securities scam. They got taken by a smooth-talking salesman who sold them stock that wasn't worth the paper it was written on. *The defendant, John Tenney, deliberately defrauded dozens of decent people[.] Three hundred and thirty-three people, mostly citizens of Utah, bought Cellwest stock for somewhere between $4 million and $11 million.*

In addition, the prosecutor made repeated allegations that individuals "were losing their shirts," including James Zieglowsky, who "lost nearly everything that he had," and was no longer able to send his children to college. After the State concluded its case-in-chief, defendant made oral and written motions for mistrial based upon these statements. The trial court denied the motion, ruling that there was no prosecutorial misconduct, and in any event, it was not prejudicial.

■ Because the evidence did not support such contentions, we agree with defendant that the prosecutor should not have suggested that defendant defrauded 333 people and should not have made inflammatory statements regarding individuals "losing their shirts" or college funds. A prosecutor's opening statement "should give the jury an unargumentative overview of the facts the party intends to prove." *State v. Lafferty,* 749 P.2d 1239, 1254 (Utah 1988). This opening statement was neither unargumentative, nor, viewed in a reasonable light, an overview of facts the State intended to prove. Thus, the first prong of the test for reversible prosecutorial misconduct has been established.

2. Defendant attempts to elaborate on the prejudice analysis in the reply brief, but still falls short of demonstrating that there was no "compelling proof of defendant's guilt." *Troy,* 688 P.2d at

■ The second prong of the test requires the defendant to demonstrate that "'the error is substantial and prejudicial such that there is a reasonable likelihood that, in its absence, there would have been a more favorable result.'" *Wright,* 893 P.2d at 1118 (quoting *Peters,* 796 P.2d at 712); *see also Lafferty,* 749 P.2d at 1255. Prejudice must be established "in light of the totality of the evidence." *Wright,* 893 P.2d at 1119; *see also Troy,* 688 P.2d at 486 (noting that prejudice prong "involves a consideration of the circumstances of the case as a whole. In making such a consideration, it is appropriate to look at the evidence of defendant's guilt"); *Stevenson,* 884 P.2d at 1290 (finding no prejudice where "our review of the record reveals ample evidence upon which the jury could have convicted defendant"). Defendant has not attempted to demonstrate that in the absence of the prosecutor's remarks, the jury's verdict would have been different, relying instead upon a type of per se prejudice argument.[2] While other jurisdictions have found that egregious misconduct by a prosecutor can "so color[ ] the proceedings that [defendant] was denied a fair trial," *State v. Echevarria,* 71 Wash.App. 595, 860 P.2d 420, 422–23 (1993); *see also, State v. Kenny,* 128 N.J.Super. 94, 319 A.2d 232, 241 (A.D.1974), *aff'd,* 68 N.J. 17, 342 A.2d 189 (1975), Utah requires a more concrete showing of prejudice compared to the strength of the evidence against defendant. Even if defendant had attempted to show prejudice, it is unlikely we would conclude the prosecutor's statements had, as the trial court put it, "any prejudicial effect, considering the other compelling evidence that has been received consistent with the elements of the counts charged in the information."

■ In light of defendant's failure to demonstrate prejudice, his claim of reversible prosecutorial misconduct necessarily fails. Additionally, we note the trial court commented twice during opening statements that anything said during opening statements did not constitute evidence, and in-

487; *see also State v. Emmett,* 839 P.2d 781, 786 (Utah 1992) (finding prejudice where evidence of guilt "was not strong" and errors impacted heart of defendant's defense).

cluded a jury instruction to that effect as well. *See Stevenson*, 884 P.2d at 1290–91 (finding no prejudice to defendant from prosecutorial misconduct where, inter alia, trial court "emphatically instructed jurors not to consider the [improper] remark in their deliberations"). Thus, the trial court took several steps to obviate any prejudice resulting from the prosecutor's misconduct. For these reasons, we conclude that the prosecutor's misconduct was not prejudicial.

### 3. Expert Witness Testimony

■ Defendant objects to testimony provided by the State's two expert witnesses that certain of his actions violated the Utah Uniform Securities Act. *See* Utah Code Ann. §§ 61–1–1 to –30 (Supp.1995). These legal conclusions, defendant contends, violated Utah Rule of Evidence 704 and should have been excluded. Defendant did not make contemporaneous objections to these statements, thus we review them for plain error. *State v. Dunn*, 850 P.2d 1201, 1208–09 (Utah 1993); *accord State v. Menzies*, 889 P.2d 393, 403 (Utah 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995). Plain error has three components: (1) error; (2) obviousness; and (3) prejudice, that is, a reasonable likelihood that absent the error, the verdict would have been more favorable to defendant. *Id.*

[14] The State's first expert witness, Steve Nielsen, testified that failure to disclose certain enumerated information would be a material omission *under Utah law,* that the Cellwest Business Plan did not meet disclosure requirements *under the Act,* and that defendant's predictions about the future of the stock and Cellwest's financial statements did not comply *with Utah law.* The State's second expert witness, Cathy Krendl, testified that certain information was material *under the Utah Uniform Securities Act,* that failure to disclose this information would be a material omission or misstatement *under the Act,* and that the material actually provided to investors did not meet disclosure requirements *under the Act.* In addition, Krendl testified that the buy-back agreements were securities *under Utah law.*

Expert testimony concerning ultimate issues is admissible under Utah Rule of Evidence 704. Rule 704(a) states: "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Utah R.Evid. 704(a). However, " 'it [is] clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule [Rule 704] intended to allow a witness to give legal conclusions.' " *Davidson v. Prince*, 813 P.2d 1225, .1231 (Utah App.) (quoting *Owen v. Kerr–McGee Corp.*, 698 F.2d 236, 240 (5th Cir.1983)), *cert. denied*, 826 P.2d 651 (Utah 1991); *accord State v. Larsen*, 828 P.2d 487, 493 (Utah App.1992), *aff'd*, 865 P.2d 1355 (Utah 1993). The *Davidson* court notes, nonetheless, that "[t]here is no bright line between permissible questions under Rule 704 and those that call for overbroad legal responses." *Id.; accord Larsen*, 828 P.2d at 493.

Despite the fact that there is no bright line between responses that embrace an ultimate issue and those that provide an impermissible legal conclusion, those portions of the expert witnesses' testimony to which defendant objects quite clearly state legal conclusions because the witnesses tie their opinions to the requirements of Utah law. Thus, defendant has established error and that this error should have been obvious to the court.

■ The final prong of our plain error review requires that defendant establish the prejudicial effect of the trial court's error. Defendant's sole argument regarding prejudice, again contemplating a kind of per se theory, is "[i]t was prejudicial in that the expert witness instructed the jury that certain elements were established." Beyond this brief, conclusory statement, defendant has completely failed to provide any legal analysis or precedent regarding his claim of prejudice. Given defendant's failure to demonstrate prejudice, defendant's claim of plain error fails.

### 4. Juror Misconduct

On day five of trial, one of the jurors briefly discussed the case with a colleague at work. During that conversation, the juror

observed that defendant appeared to be a "really bad guy," or a "slick operator." The juror's colleague, an acquaintance of defendant, responded that his experiences with defendant had all been good. At that point, the juror acknowledged that he should not discuss the case and terminated the conversation.

■ Defendant filed a post-verdict motion for a new trial based upon juror misconduct. Pursuant to the parties' stipulation, the motion was decided on the basis of the affidavits of the juror and the juror's colleague and memoranda submitted. The court ruled that although the juror "may have violated [R]ule 17(j), Utah Rules of Criminal Procedure, by briefly conversing ... about defendant's business practices ... that action does not justify a mistrial." The court reasoned that the juror's "actions did not indicate that he had formed an opinion or bias against defendant; neither was there any indication that the actions would impact on the juror's deliberation in this case." We review the trial court's ruling denying defendant's motion for a new trial for abuse of discretion. *State v. Thomas*, 830 P.2d 243, 245 (Utah 1992); *accord Logan City v. Carlsen*, 799 P.2d 224, 225 (Utah App.1990). " 'In other words, unless [the trial court's] determination appears to be so unreasonable that upon review it appears that [the court] was plainly wrong, in that there is a strong likelihood that the plaintiff could not have had a fair trial, we cannot say that [the court's] failure to grant one was an abuse of discretion.' " *Arellano v. Western Pac. R.R.*, 5 Utah 2d 146, 298 P.2d 527, 530 (Utah 1956) (quoting *Burton v. Zions Coop. Mercantile Inst.*, 122 Utah 360, 249 P.2d 514, 517 (1952)).

■ It is well-settled law that any contact between a juror and *witness, party, or court personnel* that is more than a brief and incidental contact results in the attachment of a rebuttable presumption of prejudice because it has the effect of "breeding a sense of familiarity that could clearly affect the juror's judgment as to credibility."

*State v. Swain*, 835 P.2d 1009, 1011 (Utah App.1992) (quoting *State v. Pike*, 712 P.2d 277, 281 (Utah 1985)) (emphasis added); *accord State v. Erickson*, 749 P.2d 620, 621 (Utah 1987); *Carlsen*, 799 P.2d at 225–26 (ruling that improper contact between jury and court participants gives rise to rebuttable presumption of prejudice due to difficulty of determining whether jurors had in fact been influenced and to avoid appearance of impropriety). In this case, the rebuttable presumption of prejudice does not attach because there was no impermissible contact between a juror and a witness, party, or court personnel. Instead, the contact was between a juror and an outsider under circumstances unrelated to the proceedings. In such a case, there is a presumption that the jurors have behaved properly, and it is the defendant's burden to provide "some definite proof of misconduct and that the said misconduct was prejudicial." *Arellano*, 298 P.2d at 530.

■ The State concedes that the juror violated the Rule 17(j) prohibition against discussing the pending case. Utah R.Crim.P. 17(j). Thus, the only issue before us is whether this violation "influenced the juror so as to prejudice the [defendant's] cause." *Arellano*, 298 P.2d at 530. Defendant apparently believed at the time he stipulated to disposition of his motion for new trial on the briefs and affidavits that it was unnecessary to conduct a hearing to determine the extent to which the juror was influenced by the conversation. The only evidence before the court, therefore, concerning possible influence of the juror, was the juror's affidavit. The juror stated in his affidavit that he had concluded the conversation with the comment that he would have to hear all the evidence before making up his mind about defendant's guilt. In addition, the juror said that he did not feel that he had discussed anything which would have had any influence upon his decision in the case. Finally, the juror stated that he had not made any personal decision at that point in time as to defendant's guilt or innocence.[3]

3. It is entirely possible that the discussion, however improper, helped rather than harmed defendant, since the juror's colleague shared his *favorable* opinion of defendant with the juror.

Based upon the evidence before the trial court, we cannot conclude that the court abused its discretion in ruling that there was no indication that the juror's improper actions would affect the juror's deliberation in the case. While the conversation was clearly improper, it did not involve anyone connected with the proceeding, it was brief, and the juror was aware that he was not permitted to form a final opinion concerning defendant's guilt or innocence until the conclusion of trial. For these reasons, we find definite proof of misconduct, but do not find the trial court's determination that no prejudice resulted from the misconduct to be "plainly wrong." *Id.* (citation omitted).

### 5. Jury Instructions

Defendant argues the trial court improperly instructed the jury in several respects.

#### A. *Employing an Unregistered Agent*

■ Instructions 41 and 42 state that to be guilty of employing an unregistered agent in violation of Utah Code Ann. § 61–1–3(2) (1993), defendant must have "[e]mployed [Bowers or Jensen] ... [t]o offer or sell any security ... [t]o [individuals]." Defendant argues that the instructions should have read "employed Bowers or Jensen *as an agent* to offer or sell any security to individuals." Defendant claims that because the term "agent" was not in these instructions, the jury would feel no need to refer to the instruction defining agent, Instruction 45.

We find no merit in this contention. The statements in Instructions 41 and 42 that defendant must have "employed" Bowers or Jensen "to offer or sell any security" are virtually identical to the definition of agency provided in Instruction 45. Instruction 45 states that,

> You are instructed that the term "agent," for purposes of Utah's securities law, means any individual other than a broker-dealer who represents a broker-dealer or issuer in effecting or attempting to effect purchases or sales of securities.

Thus, there is no meaningful difference between the definition of agent in Instruction 45 and the use of the term "employ" in Instructions 41 and 42. In addition, the term "employ" is defined in Instruction 44 as "to engage one's service, hire, or use as an *agent* or substitute in transacting business, or to utilize or make use of." Thus, it follows that the jury was referred to Instruction 45, defining agency, albeit indirectly.

#### B. *Definition of Agent*

■ Defendant argues that Instruction 45 inaccurately defines "agent" under the Utah Uniform Securities Act because it does not include a list of exceptions to the definition. However, there was no evidence presented that the employment/agency relationships in question fit within any of the exceptions. In fact, the uncontroverted evidence was that Bowers and Jensen were paid commissions. Therefore, the exceptions, which apply to certain uncompensated individuals, *see* Utah Code Ann. § 61–1–13(2)(a), (b), & (c) (1993), would not be applicable. *Cf. Anderson v. Toone*, 671 P.2d 170, 174 (Utah 1983) (error to give "assumption of risk" language in instruction in negligence case in absence of evidence supporting theory), *overruled in part on other grounds by, Randle v. Allen*, 862 P.2d 1329 (Utah 1993).

#### C. *Criminal Responsibility for Acts of Others*

■ Instruction 52 stated that defendant was responsible for the actions of any agents or "authorized salesman" whose statements defendant "authorized." Defendant objects to the fact that the jury was not provided with a definition of the term "authorized." In addition to the plain meaning of the word "authorized," the jury was provided with an instruction defining criminal liability for the conduct of others. Instruction 53 states:

> You are instructed that under the laws of the State of Utah a person is criminally liable for conduct constituting an offense which he performs or causes to be performed in the name of or on behalf of a corporation or association to the same extent as if such conduct were performed in his own name or behalf.

Therefore, an instruction specifically defining "authorized" was unnecessary.

### D. *Unanimity of Verdict*

Instructions 27–39 set forth the elements of securities fraud involving thirteen different purchasers. The fifth element of these instructions states that defendant

 5. Either

 a) employed a device, scheme, or artifice to defraud, OR

 b) made an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, OR

 c) engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

Defendant argues that providing these instructions constituted error because they outline three possible alternative acts required for the crime of securities fraud and do not require jury unanimity as to a specific act. Defendant did not object to these instructions at trial, thus we review them for plain error. *See State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993).

 It is well-settled that "jury unanimity is necessary as to all elements of a crime." *State v. Saunders,* 893 P.2d 584, 588 (Utah App.1995). However, in *Saunders,* this court also noted the "Utah Supreme Court's struggle in dealing with unanimity problems," *id.* at 589, and did not find plain error in an instruction failing to require unanimity regarding the particular act or acts committed as long as each juror believed "beyond a reasonable doubt, that at least one prohibited act occurred." *Id.* at 588. In addition, the Utah Supreme Court stated in *State v. Russell,* 733 P.2d 162 (Utah 1987):

> "It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon the other."

*Id.* at 165 (quoting *People v. Sullivan,* 173 N.Y. 122, 65 N.E. 989, 989–90 (1903) (citation omitted)).

[24] Defendant correctly recognizes that there is an exception to the *Sullivan* rule embraced in *Russell.* Specifically, *Russell* states that "[i]f the statute under which the defendant is convicted actually defines more than one crime and not merely one crime which may be committed in several different ways, the defendant is entitled to jury unanimity on which crime he is guilty of committing." *Russell,* 733 P.2d at 166–67. However, even if the statute, and hence the instruction, could be viewed to prohibit "conceptually distinct categories [of acts]", *id.* at 167, this viewpoint is not so plainly apparent that the failure to require jury unanimity on the precise act committed by defendant constituted plain error by the trial court. Moreover, as this court noted in *Saunders,*

> Utah cases considering jury unanimity in other contexts provide no uniform rule that, by extension, would have made it obvious to the trial court that [the challenged instruction] would be erroneous. *See, e.g., State v. Russell,* 733 P.2d 162, 163–68, 169–71, 175–78 (Utah 1987) (applying three distinct analytical approaches to conclude that jury unanimity is not required on alternative mental states necessary to support criminal homicide conviction); *State v. Tillman,* 750 P.2d 546, 562–68, 577–80, 585–88 (Utah 1987) (indicating division of views among justices as to whether jury must unanimously agree on specific aggravating circumstance necessary to support first degree murder conviction), *cert. denied,* —— U.S. ——, 114 S.Ct. 706, 126 L.Ed.2d 671 (1994).

*Saunders,* 893 P.2d at 589.

Thus, we conclude, as in *Saunders,* that

> [g]iven the Utah Supreme Court's struggle in dealing with unanimity problems, we cannot say that any error the trial court committed in instructing the jury that it need not unanimously agree on which specific act ... defendant committed—so long as it believed, beyond a reasonable doubt, that defendant was guilty of all of the elements of the crime charged—would have been obvious to the trial court.

*Id.* [4] Finally, we reiterate the Utah Supreme Court's position that " '[t]o require unanimity as to the manner of participation would be to frustrate the justice system, promote endless jury deliberations, encourage hung juries, and precipitate retrials in an effort to find agreement on a nonessential issue.' " *Russell,* 733 P.2d at 167–68 (quoting *Holland v. State,* 91 Wis.2d 134, 280 N.W.2d 288, 293 (1979)).

E. *Device, Scheme, or Artifice to Defraud*

■ Defendant argues that the securities fraud instructions were flawed because they did not provide a definition for "employed a device, scheme or artifice to defraud." Defendant did not raise this objection at trial, thus we again review the decision to give the instruction for plain error. Utah case law has not addressed this issue, and on its face, the instruction does not appear to be vague or unclear. Moreover, defendant has not explained how the jury could have misperceived this instruction, or what the practical effect of the misperception would have been. Accordingly, we reject defendant's argument.

F. *Unregistered Securities Broker*

Defendant contends that Instruction 40, stating the elements for the charge of transacting business as an unregistered broker-dealer or agent, is fatally flawed because it does not define the term "agent" and does not include the statutory exclusions to the term "broker-dealer." The argument regarding the definition of agent has been addressed above. Defendant's argument regarding exclusions to the term broker-dealer fails because, again, he does not refer to evidence in the record demonstrating that he fit within the exclusions.

6. Restitution

■ Defendant argues that the trial court erroneously ordered him to pay $39,000 in restitution to Cellwest investor James Zieglowsky. Restitution for Zieglowsky's losses was provided for under Utah Code Ann. § 76–3–201(4)(a)(i) (Supp.1995). This

statute permits the court to order restitution in an amount up to double the amount of pecuniary damages suffered by the victim. Defendant claims that he did not have an opportunity to be fully heard on this issue, the evidence presented was inadequate, and that the judge should have explored the issue of Zieglowsky's partial responsibility for certain foreclosure actions. In short, defendant argues that the damages in this case should have been a civil matter.

With respect to the arguments that defendant did not have the opportunity to be fully heard and that the evidence was inadequate, defendant expressly agreed to resolve the restitution issue by proffer. Defendant's argument that a civil action is the proper place to determine and assess damages also fails. Defendant has not established that the statute stating that the trial court shall order restitution is unconstitutional, nor does he show that this statute does not apply to him. Finally, defendant incorrectly analogizes the instant case to *State v. Robinson,* 860 P.2d 979 (Utah App.1993), *cert. denied,* 878 P.2d 1154 (Utah 1994). *Robinson* held that restitution was improper in connection with a "traffic violation that involve[d] only negligence, and not criminal intent." *Id.* at 983. Defendant's case involved the criminal intent of willfulness, not negligence. Thus, defendant has failed to demonstrate that section 76–3–201(4)(a)(i) is not applicable.

CONCLUSION

Despite the existence of some errors at trial, in particular, prosecutorial misconduct and the admission of certain expert witness testimony, we find no grounds for reversal due to defendant's inability to establish prejudice. Further, our review of the record indicates that defendant voluntarily, intelligently, and knowingly waived his right to assistance of counsel. We also find no error in connection with the instructions given by the trial court, and no prejudice stemming from the juror misconduct. Finally, we affirm the restitution award to Zieglowsky. Based upon the foregoing, we affirm.

4. Our analysis applies equally to defendant's contention that the trial court erred in not instructing the jury that unanimity was required as to

counts pertaining to selling unregistered securities and employing an unregistered agent.

JUDITH M. BILLINGS, J., concurs.

ORME, P.J., concurs, except as to section 5(A), in which he concurs only in the result.