PEARCE, Judge
(concurring in part and concurring in the result in part):
T26 I concur that the trial court did not err in denying Chapman's motion for a di *239 rected verdict as discussed in Part I of the majority opinion's analysis. I respectfully disagree with the conclusion that the trial court operated within the bounds of its discretion when it permitted Michael Hines, the then-Director of Enforcement at the Utah Division of Securities, to testify concerning the materiality of Chapman's statements and omissions. However, because Chapman has not shown that he was prejudiced by the trial court's admission of Hines's testimony, I concur in the result the majority opinion reaches in Part II of its analysis.
1 27 The trial court allowed Hines to testify concerning materiality, reasoning,
I think that the Courts have made a determination that securities fraud cases and securities are very technical in nature. I think that the Courts have ruled in respect that the experts can make-can testify in regards to what securities are and what facts they would state they consider to be material or not material if omitted or provided.
Although the trial court did not provide the basis for its ruling, both parties have briefed this matter as if the court relied upon State v. Larsen, 865 P.2d 1355 (Utah 1993), to reach its conclusion. See id. at 1861 ("[Elx-pert testimony may be appropriate in seeurities fraud cases because the technical nature of securities is not within the knowledge of the average layman or a subject of common experience and would help the jury understand the issues before them." (citation and internal quotation marks omitted)).
128 To the extent the trial court read Larsen to require the admission of expert testimony in every securities fraud case, it greatly expanded Larsen's reach,. Larsen held that a trial court did not abuse its discretion in permitting expert testimony concerning the materiality of information that a securities fraud defendant had omitted from documents provided to investors. However, Larsen specifically disavowed the suggestion that "the trial court must allow expert testimony regarding materiality, especially testimony utilizing the term (material"" Id. at 1863 n. 12 (emphasis added). Larsen did not alter the requirement that to be admissible, expert testimony must be "helpful to the finder of fact" under rule 702 of the Utah Rules of Evidence. See State v. Rimmasch, 775 P.2d 388, 398 n. 8 (Utah 1989). Nor did Larsen exempt expert testimony in securities fraud cases from the reach of rule 408 of the Utah Rules of Evidence. Indeed, Larsen noted that "an integral element of a rule 702 determination to admit expert evidence is a balancing of the probativeness of the evidence against its potential for unfair prejudice" and that the balancing of those two factors "mimics that under rule 403 and is necessary to a determination of 'helpfulness.'" 865 P.2d at 1368 n. 12. Despite this instruction and Chapman's objection to Hines's testimony on those grounds, nothing in the record before this court suggests that the.trial court ever considered whether the testimony would actually be helpful to the jury.[12]
129 In other words, the trial court never examined whether Hines's testimony would help the jury "understand the evidence or to determine a fact in issue." Utah R. Evid. 702(a). Unlike many securities fraud cases, where the issues are complex, the questions presented to the jury concerning materiality in this case were straightforward. The State alleged that Chapman had made misrepresentations, including that there was equity in Rowley's property, that Chapman possessed a document that would allow him to access that equity in case of default, and that Chapman would personally guarantee repayment. *240 The State also alleged that Chapman had failed to disclose material facts, including that he had not adequately researched Row-ley's ability to. pay and that Chapman stood to receive a $70,000 commission on the transaction.
{30 Hines testified on direct examination that "an important fact is the same as a material fact." He then testified as to examples of "important facts," including: (1) "if the principals in the issuing company have civil histories, bankruptcies, criminal histories"; (2) "facts relative to your ability to get your money back"; (8) "the actual risks associated with an investment"; and (4) "what compensation or commission, if any, is paid to individuals." In addition, Hines testified that "it would be important for the investor to actually see financial statements, preferably audited financial statements" and that "if the individuals who are offering and selling the securities are not licensed, that's a fact that would be important to the investor to know."
131 To determine whether Hines's testimony would aid the jury, the trial court first needed to "decide whether the subject [of the expert's testimony] is within the knowledge or experience of the average individual." Larsen, 865 P.2d at 1861. The definition of materiality in the context of securities fraud is whether the statement or omission is "likely to influence a reasonable investor."[13] Id. at 1862. The initial question for the trial court should have been whether an average individual would know that a reasonable investor would be influenced by learning: (1) that Chapman had not investigated Madsen's ability to repay the loan; (2) that contrary to his representation, Chapman did not have a document that would allow him to access the equity in Madsen's Property; (8) that Chapman did not intend to personally guarantee repayment; and (4) that Chapman would be paid a $70,000 commission on the $70,000 loan.
1 32 It is well within the experience of the average layperson to know that a reasonable investor would likely be influenced by basic information about a financial transaction, such as "facts relative [to an investor's] ability to get [his or her] money back." For example, Chapman was alleged to have misrepresented that he had "a document that would allow [them] to go and get" the borrower's property in the case of default. The jury did not need an expert's help to understand that such information would likely influence a reasonable investor.
€33 Hines's testimony reflected that lack of complexity. Hines simply listed categories of information and told the jury that an investor would deem them to be important. Hines made no attempt to explain why such information would be important to an investor. Hines may not have explained his conclusions because they needed no explanation. An average person would already know that a reasonable investor would be influenced by the kind of information the State accused Chapman of misrepresenting or omitting.
" 34 Moreover, the trial court never examined whether it would be helpful for the jury to have the sitting Director of Enforcement for the Division of Securities recite categories of information he opined investors would consider important without explanation of the information's import. On the facts of this case and the allegations leveled against Chapman, Hines's materiality testimony was not helpful.[14] Cf. Sawant v. Ramsey, No. 3:07-cv-980, 2012 WL 2046812, at *2 (D.Conn. June 6, 2012) (disallowing expert testimony concerning materiality of purported misrepresentations and omissions, reason *241 ing that "(allthough in some instances, in the context of a much more complicated segment of the stock market, expert testimony may be admissible as helpful to suggest 'the inference which should be drawn from the specialized knowledge to the facts," the Court finds that the facts presented by the current case are simple and straightforward" (citation omitted)). Because Hines's testimony on the question of materiality was unhelpful, the trial court exceeded its discretion in admitting that testimony.[15]
135 Chapman also argues that Hines's testimony should not have been admitted, because the danger for unfair prejudice outweighed its probative value. See Utah R. Evid. 403. Chapman specifically contends that Hines's testimony crossed the line into improper legal conclusions and blurred the "separate and distinct responsibilities of the judge, jury, and witness." See State v. Davis, 2007 UT App 18, ¶15, 155 P.8d 909 {citation and internal quotation marks omitted). This argument requires exploration of the boundary that separates testimony concerning the ultimate issue in the case-permitted by rule 704 of the Utah Rules of Evidence-and testimony that amounts to an improper legal conelusion-which our case law has held inadmissible. See State v. Tenney, 913 P.2d 750, 756 (Utah Ct.App.1996). This court has previously noted that there is "no bright line between responses that embrace an ultimate issue and those that provide an impermissible legal conclusion." Id.; accord Davis, 2007 UT App 18, ¶ 16, 155 P.3d 909 ("No 'bright line' separates permissible ultimate issue testimony under rule 704 and impermissible 'overbroad legal responses' a witness may give during questioning." (citation omitted)).
136 In cases concerning materiality, the question turns on whether the experts "tie their opinions to the requirements of Utah law." Tenney, 913 P.2d at 756. In Tenney, we concluded that an expert's testimony crossed the line because he testified that certain information constituted "a material omission wunder Utah law" and that another expert's testimony was improper because she testified the information "was material under the Utah Uniform Securities Act." Id. Our reasoning in Tenney is consistent with the Utah Supreme Court's decision in Larsen, which permitted an expert to testify about information that "could have been important or significant to an investor" but stated that the expert "should have avoided using the specific term 'material" " State v. Larsen, 865 P.2d 1355, 1362 (Utah 1993).[16] Larsen specifically noted that the expert did not testify that, "as a matter of law, the facts satisfied the legal standard of materiality." Id. at 1361 n. 10.
137 In an apparent effort to stay on the right side of that less-than-bright line, Hines attempted to avoid directly opining that a fact was "material," preferring instead to define "material" as "important" and then testify as to what a reasonable investor would find important. Hines's testimony was not quite so cleanly on the right side of the line, however. Immediately after listing the "important information," Hines opined that the securities laws "require total disclosure of all important facts to potential purchasers." Although not as blatantly explicit as the testimony Tenney found improper, Hines's testimony implicitly tied his opinion to the requirements of Utah law. Hines also testified on direct examination that "the financial condition of the issuer is an important fact that needs to be disclosed," a statement that also implicitly ties its conclusion to a requirement of Utah law. These portions of Hines's testimony constituted improper legal conclusions and should not have been admitted into evidence.
1 38 In order for Chapman to obtain relief based on a showing of erroneously admitted *242 testimony, he also must demonstrate prejfu-dice. State v. Johnson, 2009 UT App 382, ¶37, 224 P.3d 720. This court "will not overturn a jury verdict for the admission of improper evidence if the admission of the evidence did not reasonably [alffect the likelihood of a different verdict." State v. Houskeeper, 2002 UT 118, ¶ 26, 62 P.3d 444. That Hines's materiality testimony simply recited common-sense conclusions that were within the ken of the average juror makes it difficult for Chapman to demonstrate prejudice. Because it is reasonably likely that the jury would have reached the same conclusion-that Chapman's statements and omissions were material to a reasonable investor-with or without Hines's improper testimony, Chapman has not established prejudice.
Moreover, we have previously held that in some cireamstances a trial court can ameliorate "any potentially prejudicial ef-feets" of an expert offering an improper legal conclusion by "correctly and promptly" instructing the jury. Johnson, 2009 UT App 382, ¶¶ 38-39, 224 P.3d 720. Chapman attempts to distinguish his case from those, like Johnson, where we have held that proper jury instructions and thorough eross-examination of the expert have cured any potential prejudice because the expert testimony in those cases "was not erroncous at all or so slightly erroneous." That attempt is unavailing because the expert testimony in Johnson-coincidentally also offered by Hines-does not differ significantly from that offered here. In Johnson, Hines: (1) "defined the kind of material facts that must be disclosed under section 61-1-1 of the Securities Act"; (2) testified that "officers of a corporation have a specific duty to disclose material facts about their backgrounds"; and (8) testified "to the hypothetical types of statements or omissions that would violate section 6l-1-1." Id. 110. Johnson did not reach the question of whether the trial court erroneously admitted the testimony because it found any potential prejudice had been cured by jury instruction and cross-examination. The facts of this case are not so différent as to warrant a different outcome.
{40 For these reasons, I concur in the majority opinion's holding with respect to the directed verdict but concur only in the result with respect to the admission of Hines's expert testimony.

. The majority opinion suggests that Chapman failed to raise this argument in the trial court. Chapman conceded below that Hines could testify to "any other question that would help an average layman understand the concept of securities" but argued that Hines "should be excluded from providing an opinion as to what a reasonable purchaser in this particular situation would want to know." The State's opposition to the motion in limine specifically argued that Hines's testimony would be helpful under rule 702. The State quoted State v. Larsen, 865 P.2d 1355 (Utah 1993), for the proposition that "[in determining 'helpfulness,' the trial court must first decide whether the subject is within the knowledge or experience of the average individual." The State also argued that "[mJuch of this information is not within the knowledge of the average layman or within the common experience." The issue I address was presented to the trial court.

. The Utah Supreme Court has also defined a "material fact' as 'something which a buyer or seller of ordinary intelligence and prudence would think to be of some importance in determining whether to buy or sell." Gohler v. Wood, 919 P.2d 561, 567 (Utah 1996) (emphasis omitted) (citation and internal quotation marks omitted).

. This is not to suggest that expert testimony concerning materiality can never be helpful to a finder of fact. As Larsen recognized, there are cases where the "technical nature of securities is not within the knowledge of the average layman or a subject within the common experience." 865 P.2d at 1361 (citation and internal quotation marks omitted). But a trial court cannot distinguish between those cases where expert testimony would assist and those where it would not if the court fails to conduct the rule 702 inquiry.

. The trial court also failed to analyze whether Hines's testimony regarding promissory notes and predicate statements would be helpful to the jury. But Chapman has not demonstrated that these topics were within the knowledge and experience of an average person and that, therefore, Hines's testimony should have been deemed unhelpful and inadmissible.

. The supreme court also noted that the defendant in Larsen had lodged his objection to the expert's use of the term "material" under rule 702 of the Utah Rules of Evidence, not rule 403. See 865 P.2d at 1363 n. 12. The court suggested that "[if Larsen had made [an objection pursuant to rule 403], it might have merited serious consideration by the trial court." Id.