2025 UT App 184

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSHUA RYAN BRIDGEWATERS,
Appellant.

Amended Opinion[*]
No. 20221065-CA
Filed December 11, 2025

Third District Court, West Jordan Department
The Honorable L. Douglas Hogan
No. 171404503

Robert T. Denny, Attorney for Appellant

Derek E. Brown and Lindsey Wheeler,
Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and AMY J. OLIVER concurred.

LUTHY, Judge:

¶1 Leading up to his criminal trial, Joshua Ryan Bridgewaters made multiple requests to represent himself. The trial court denied his final request without determining whether Bridgewaters's express waiver of his right to counsel was knowing and intelligent. Instead, the court appears to have based

---

[*] This Amended Opinion replaces the Opinion in Case No. 20221065-CA issued on October 30, 2025. After that opinion issued, the appellee filed a petition for rehearing, and we called for a response. We grant the petition and issue this revised opinion, which contains modifications to paragraphs 29 and 32 to clarify that the decision of whether to appoint standby counsel is within the sound discretion of the district court.

its denial of Bridgewaters's request on a determination that Bridgewaters was making the request to delay trial. Accordingly, the court required Bridgewaters to be represented by counsel at trial, where a jury found Bridgewaters guilty of manslaughter and witness tampering.

¶2 Bridgewaters now appeals the denial of his request to represent himself at trial. We conclude that absent forfeiture or an implied waiver of the right to self-representation, denial of a defendant's explicit request to proceed pro se constitutes error when the court fails to root that denial in a finding that the request was not knowingly and intelligently made. We further conclude that a defendant cannot impliedly waive the right to self-representation through dilatory tactics or other similar misconduct unless the court first warns the defendant that such misconduct will constitute a waiver. Here, because the court denied Bridgewaters's request without finding that it was not knowingly and intelligently made, and because the court failed to warn Bridgewaters that his use of self-representation as a mechanism for delay would result in a waiver, the court erred by denying Bridgewaters's request. We therefore vacate Bridgewaters's convictions and remand for a new trial.


BACKGROUND

¶3 Bridgewaters was charged with murder, obstruction of justice, and witness tampering, all in connection with the death of his girlfriend.

¶4 Bridgewaters's trial was originally scheduled for October 2018. But it was repeatedly rescheduled for various reasons, including the State's request for a continuance, delays associated with the COVID-19 pandemic, cancellation by the court, conflicts with or changes in counsel not of Bridgewaters's doing, and changes in counsel at Bridgewaters's behest. Trial was eventually held in September 2022.

¶5    Before trial, Bridgewaters repeatedly requested to represent himself. On June 21, 2021, the court received a handwritten letter from Bridgewaters requesting "a hearing . . . regarding [his then] current counsel and how [he] would like to proceed as for the best of [his] interest." The court held a hearing on July 8, 2021, at which Bridgewaters's attorney stated, "I believe [Bridgewaters] still wants to go forward with just representing himself." The court noted that Bridgewaters had gone through several attorneys already due to a history of him becoming "very anxious . . . on the eve of trial," prompting him to switch counsel. The court said that if Bridgewaters proceeded pro se, it would appoint standby counsel because otherwise Bridgewaters might do something during trial that would "cause the whole thing to have to start over again." The court sought and received Bridgewaters's acknowledgement that the charges he was facing were very serious. The court also highlighted some risks of proceeding pro se and instructed Bridgewaters that the court would not be able to engage in discussions with him about trial strategy. Despite the court telling Bridgewaters it was "an enormously bad idea" for him—or anyone—to self-represent, Bridgewaters said he wanted to exercise his "constitutional right . . . to go pro se." The court then ordered Bridgewaters's attorney to serve as standby counsel, although the court made no specific finding that Bridgewaters had knowingly and intelligently waived his right to counsel.

¶6    A couple of weeks later, at a hearing on July 20, 2021, at which Bridgewaters was not present, the prosecutor informed the court that he would be leaving the district attorney's office and joining the same firm as Bridgewaters's standby counsel, which would create a conflict. The court noted that Bridgewaters had "expressed some desire to . . . represent himself," but it did not resolve the issue of Bridgewaters's representation at that time. Instead, the court scheduled a status hearing for the following month to give Bridgewaters's standby counsel an opportunity to inform Bridgewaters of the impending conflict, and to give Bridgewaters some time to "think[] about it."

¶7 On the date of the scheduled status hearing, the prosecutor filed a motion for leave to withdraw, which was granted the same day, and the contemplated status hearing was continued. Subsequently, the status hearing was continued four additional times. In the meantime, the court ordered Bridgewaters's standby counsel to withdraw, and it appointed new counsel "to represent [Bridgewaters] in all future proceedings." On September 27, 2021, the newly appointed attorney entered an appearance on behalf of Bridgewaters. The status hearing was then held on October 28, 2021.

¶8 Bridgewaters's new attorney filed, among other things, a motion to dismiss, and on March 29, 2022, the court held an evidentiary hearing on that motion. During that hearing, Bridgewaters's new attorney questioned various witnesses, presented arguments on the motion to dismiss, and responded to counterarguments from the State. After hearing those arguments, the court denied the motion to dismiss and set a trial date of September 6, 2022, with jury selection to begin on August 31, 2022. Bridgewaters's new attorney then discussed jury instructions and the voir dire process with the court.

¶9 After the business of the hearing was complete, the court asked if there was anything else that needed to be addressed. At that point, Bridgewaters himself spoke up, and the following exchange occurred:

> [Bridgewaters]: . . . I know, Judge . . . , you're very opposed to this and very against it, but I am just not comfortable going forward with [my attorney]. . . . I mean, for the record, I'm a United States citizen, correct? Right?
>
> [Bridgewaters's counsel]: I believe so.
>
> [Bridgewaters]: Okay. I have constitutional rights, correct?

[The State]: Goes without saying.

[Bridgewaters]: Okay. Including the right to be represented by counsel[;] therefore, I am declining counsel. I want to be pro se. I would like to keep my trial date set on the computer or on your calendar, . . . and that's that.

. . . .

[The court]: . . . I'm happy to do this again, Mr. Bridgewaters. And you're correct that I think it's a horribly unwise choice to make—

[Bridgewaters]: It is.

[The court]: —to navigate the rules and procedure with what's at stake. A person to do that on their own, I think it's the most foolish thing a person can do. . . .

. . . .

. . . [I]f we were to go through [a] *Frampton*[1] colloquy[,] . . . I'd have to make a finding that you're knowingly and intelligently waiving the right to counsel.

There's quite a bit of case law about the first part about that, about the knowingly. There's shockingly little said about the intelligent part of that because I think what's unspoken is that we

---

1. In *State v. Frampton*, 737 P.2d 183 (Utah 1987), our supreme court endorsed a model colloquy for trial courts to use in determining whether a defendant is knowingly and voluntarily waiving the right to counsel. *See id.* at 187 n.12.

agree that it's unwise and that anyone who walks in would agree that it's unwise to do it. So how could that be intelligent and what finding it's made as to intelligence?

I think what normally happens is judges go [through] the colloquy and if a person strongly wants to represent themselves, unless the [j]udge has a sense that they're going . . . to be disruptive in [c]ourt, not follow [c]ourt orders, unless they're thinking that, I think they mostly allow folks to represent themselves. I don't think it makes a whole lot of sense.

. . . What's the purpose to asking all those questions if the automatic answer from the [c]ourt in every case is, Well, go ahead and represent yourself? Then why would we even bother asking the questions?

[Bridgewaters]: I've been sitting here for five years trying to get to that.

[The court]: . . . So if we go through that *Frampton* colloquy, I don't have any doubt this is what you want to do. This is what you say you want to do. The intelligent part would be this. If you represent yourself, you necessarily waive any ineffective assistance of counsel claims that might happen. So if you make any mistake along the way as far as how to proceed and those mistakes actually hurt you and hurt you in the case, you've waived all those issues. You have no ability to appeal any of that and you have no recourse.

So is a person intelligently making that decision? I don't know. And I don't know that the

colloquy really helps me make a finding on that point. That's why I'm previewing this to you now because I want you to think about that, whether you're really truly willing to waive all of those potential appellate issues because that's what you'd be doing if you represent yourself.

The court then offered to set a hearing to "go through [the *Frampton*] colloquy." Bridgewaters said that he wanted such a hearing, and the court scheduled one for April 14, 2022.

¶10 At the April 14, 2022 hearing, the court and Bridgewaters had the following discussion:

[The court]: We've gone through the colloquy before.[2] And in the [c]ourt's view, the purpose of the *Frampton* colloquy . . . is to—if a person is asking

---

2. The court's mention of a prior *Frampton* colloquy appears to be a reference to the hearing on July 8, 2021, where Bridgewaters asked to proceed pro se and the court highlighted some of the risks of doing so and instructed Bridgewaters that it would not be able to engage in discussions with him about trial strategy if he chose to represent himself. The record, including the minutes of the various hearings below, indicates that the only other time prior to March 29, 2022, when Bridgewaters requested to proceed pro se—and, thus, the only other time the court would have had occasion to conduct a *Frampton* colloquy—was at a hearing on February 8, 2019. According to the transcript of that hearing, however, the court told Bridgewaters then that it was "not going to go through all the different questions [it] would normally go through if a person wanted to represent themselves." Instead, it asked Bridgewaters if he would accept new appointed counsel, Bridgewaters said he would, and the court appointed new counsel. Thus, the only *Frampton*-like colloquy prior to the hearing on April 14, 2022, to which the court could have been referring appears to be the one on July 8, 2021.

to represent themselves and they don't fully grasp or understand what that really means[—then the] purpose of going through the questions is to try to have a lightbulb come on inside their mind and have them gain some awareness that maybe this is a lot more complicated than I think it's going to be. I haven't studied the law. I am not familiar with the Rules of Evidence. I'm not familiar with criminal procedure. I'm not familiar with courtroom procedure. I'm maybe not even sure how I would get my own testimony properly before the [c]ourt and before the jury.

So when you go through the *Frampton* colloquy, as you ask questions, oftentimes, you have a person say, you know what, maybe this isn't a good idea. In fact, we did this, you and I, one time previously, and you acquiesced and said, You know what, I will have counsel.[3]

Now, you've asked to do this again. And I don't know if it makes any sense to go all the way through the colloquy again. What I'd like to know from you, Mr. Bridgewaters, is why, at this point, do you think you would be better served—facing a first-degree felony murder charge with a possibility of the remainder of your natural days in prison[—] why do you think you would be better off handling the matter on your own without the assistance of somebody trained in law?

---

3. The court appears to have been conflating what occurred at the February 8, 2019 hearing with what occurred at the July 8, 2021 hearing. *See supra* note 2.

[Bridgewaters]: Well, because I'm 100 percent innocent, and I feel better representing myself.

[The court]: Hold on right there.

[Bridgewaters]: Okay.

[The court]: I take what you said very, very seriously. And if a person is 100 percent innocent, that is exactly the [person] who needs the help of a lawyer, who's trained, [who] knows all the rules and the process. And that would be the biggest travesty of justice if there were a person who was 100 percent innocent that didn't have the benefit of an attorney. And you're asking to go forward without an attorney. Does that make any sense?

[Bridgewaters]: I mean, it does. Absolutely.

[The court]: Okay. All right. To the [c]ourt, it does not, and I will not allow it.

[Bridgewaters]: Okay. Well, I have to find an attorney then. I mean, are you going to appoint me a new attorney?

[The court]: You have appointed counsel.

[Bridgewaters]: Well, that's my constitutional right to represent myself.

[The court]: It is your right to represent yourself, but it's not without limits. And there's . . . a pattern of delay, and I'm not going to allow you to once again change counsel, which would cause further delay to the case. You're not allowed to prejudice the case.

Shortly thereafter, the court also said, "When we get close to trial, this is . . . your mechanism for delaying the proceeding." Bridgewaters contended that the trial was still five months away and that he was "ready to go by [him]self." He then reiterated that he wanted to represent himself and did not want counsel. The court denied his request.

¶11 The case proceeded to a jury trial as scheduled, during which Bridgewaters was represented by appointed counsel. The jury was instructed on the charged offenses of murder, obstruction of justice, and witness tampering, as well as on the offense of manslaughter as a lesser-included offense of murder. The jury convicted Bridgewaters of manslaughter and witness tampering. Bridgewaters now appeals.

## ISSUE AND STANDARD OF REVIEW

¶12 Bridgewaters asserts that the trial court violated his right to self-representation when it denied his motion to proceed pro se "without determining whether he could 'knowingly' and 'intelligently' do so." "A trial court's factual findings regarding whether the defendant knowingly and intelligently waived the right to counsel will not be overturned unless they are clearly erroneous. However, this court will apply a correction of error standard to determine whether the trial court applied the proper legal standard in reaching its decision to deny self-representation." *State v. Bakalov*, 849 P.2d 629, 634 (Utah Ct. App. 1993) (cleaned up), *aff'd in part, vacated in part*, 862 P.2d 1354 (Utah 1993) (per curiam).[4]

---

4. Bridgewaters also asserts a claim of ineffective assistance of counsel. Because we reverse his conviction on the basis of the violation of his right to self-representation, we need not address his ineffective assistance claim.

ANALYSIS

¶13    Under both the United States Constitution and the Utah Constitution, a criminal defendant has the right to counsel. U.S. Const. amend. VI; Utah Const. art. I, § 12. However, a defendant may waive this right and choose, instead, to assert the right of self-representation. *Faretta v. California*, 422 U.S. 806, 821 (1975) ("The Sixth Amendment, when naturally read, . . . implies a right of self-representation."); *State v. Pedockie*, 2006 UT 28, ¶ 26, 137 P.3d 716 ("Defendants also have the right to waive their right to counsel.").

¶14    Bridgewaters contends that he waived his right to counsel and that the trial court erred by denying his request to proceed pro se without addressing whether his attempt to exercise the right to self-representation was knowing and intelligent. The State counters by pointing to the trial court's finding that Bridgewaters was using his request to proceed pro se as a "mechanism for delaying the proceeding." The State asserts that "by weaponizing his right" to self-representation to delay trial, Bridgewaters "failed to show that he could knowingly and intelligently waive his right to counsel."

¶15    Our analysis of the parties' foregoing arguments proceeds in two parts. First, we review the relevant principles that govern a defendant's waiver of the right to counsel and concomitant invocation of the right to self-representation. We then apply those principles to the facts at hand. Our resulting conclusion is that Bridgewaters unequivocally invoked his right to self-representation and that the trial court erred by denying Bridgewaters's request without first finding that he could not knowingly and intelligently exercise the right to proceed pro se.

¶16    Second, we set forth the principles that govern a defendant's waiver or forfeiture of the right to self-representation. We then apply those principles to the facts of this case, including the court's finding that Bridgewaters was invoking the right to self-representation as a "mechanism for delaying the proceeding." Our resulting conclusion on this front is that this

finding does not support a determination that Bridgewaters waived his right to self-representation, because the court did not first warn Bridgewaters that such dilatory tactics would constitute a waiver of that right.

¶17 Based on the foregoing conclusions, we ultimately vacate Bridgewaters's convictions and remand this matter for a new trial.

## I. Waiver of the Right to Counsel

¶18 "Courts have recognized three methods pursuant to which a defendant may give up [the] constitutional right to the assistance of counsel: [true] waiver, forfeiture, and waiver by conduct." *State v. Pedockie*, 2006 UT 28, ¶ 27, 137 P.3d 716. "True waiver is the most common method by which defendants forsake their right to counsel." *Id.* ¶ 28. And it is the method Bridgewaters contends he employed here.

¶19 A true waiver of the right to counsel "typically occurs when a defendant affirmatively requests permission to proceed pro se." *Id.* In fact, to effect a true waiver, the defendant must "clearly and unequivocally request self-representation." *Id.* (cleaned up). Once the defendant clearly and unequivocally requests self-representation, "[i]t is the trial court's duty to determine whether the defendant does in fact understand the rights being waived and the potential consequences." *State v. Bakalov*, 849 P.2d 629, 636 (Utah Ct. App. 1993), *aff'd in part, vacated in part*, 862 P.2d 1354 (Utah 1993) (per curiam). "[U]nless [the] trial court appropriately finds that [the] defendant has not knowingly and intelligently chosen self-representation, it must honor that defendant's choice." *Id.* at 634.

¶20 Bridgewaters contends that he clearly and unequivocally requested self-representation and that the trial court erred by denying his request without finding that he could not knowingly and intelligently exercise that right. Bridgewaters's argument is well taken.

A.      Clear and Unequivocal Request to Proceed Pro Se

¶21     At the March 29, 2022 hearing, Bridgewaters identified his constitutional right to counsel and then said, "I am declining counsel. I want to be pro se." The court expressed its skepticism as to whether Bridgewaters or any other criminal defendant could intelligently waive the right to counsel because proceeding without counsel is "unwise and . . . anyone . . . would agree that it's unwise." But the court nevertheless told Bridgewaters that it would hold a hearing to go through a *Frampton* colloquy if Bridgewaters wanted it to. Bridgewaters said that he did, and a hearing for that purpose was set.

¶22     At the subsequent hearing, held on April 14, 2022, Bridgewaters maintained his desire to represent himself. When the court asked him why he thought he "would be better off handling the matter on [his] own," Bridgewaters said that he "felt better representing himself." After the court then stated that it would not allow Bridgewaters to represent himself, Bridgewaters said, "Well, that's my constitutional right to represent myself." And he continued to insist that he wanted to represent himself and did not want counsel. Thus, Bridgewaters satisfied the requirement of making a clear and unequivocal request to represent himself.

¶23     The State asserts that Bridgewaters "did not unequivocally communicate to the court that he wanted to exercise his right to self-representation." Essentially, the State argues that because Bridgewaters had "flipflopped" in the past as to whether he wanted to proceed pro se and "flipflop[ped] again at the [April 14, 2022] hearing," the court could reasonably determine that he was not making a clear and unequivocal request. The State's argument is unpersuasive for at least three reasons.

¶24     First, regardless of what Bridgewaters said at previous hearings, if he made a clear and unequivocal request at the March 29, 2022 and April 14, 2022 hearings, the court had a duty—absent a prior warning to Bridgewaters that a subsequent flipflop would

be deemed a waiver of the right to proceed pro se, *see infra* ¶¶ 36–45—to determine whether Bridgewaters's waiver of his right to counsel was valid. Second, the court expressly determined at the March 29, 2022 hearing that Bridgewaters had made a clear and unequivocal request to proceed pro se, saying, "I don't have any doubt this is what you want to do. This is what you say you want to do." Third, contrary to the State's assertion, Bridgewaters did not flipflop at the April 14, 2022 hearing. Although at one point he said that he had "to find an attorney" and asked whether the court was "going to appoint [him] a new attorney," viewed in context, those statements were not an indication that Bridgewaters had changed his mind about proceeding pro se. Instead, they were expressions of a fallback position in response to the court's near-immediate refusal to allow Bridgewaters to represent himself. As the hearing went on, Bridgewaters repeatedly reaffirmed his principal desire to proceed pro se. For these reasons, we are not persuaded that Bridgewaters's request to proceed pro se was anything other than clear and unequivocal.

B.      Determination Regarding the Validity of the Waiver

¶25    The second step for a true waiver of the right to counsel is a determination by the court that the waiver is valid. "When a defendant requests to proceed pro se, [the] waiver will be valid only if [the defendant] acts knowingly and intelligently . . . ." *State v. Pedockie*, 2006 UT 28, ¶ 29, 137 P.3d 716. In determining whether the defendant's waiver is knowing and intelligent, the court should make the defendant "aware of the dangers and disadvantages of self-representation, so that the record will establish that [the defendant] knows what [the defendant] is doing and [the] choice is made with eyes open." *State v. Frampton*, 737 P.2d 183, 187 (Utah 1987) (cleaned up). "Generally, this information can only be elicited after penetrating questioning by the trial court. Therefore, a colloquy on the record between the court and the accused is the preferred method of ascertaining the validity of a waiver because it [e]nsures that defendants understand the risks of self-representation." *Id.* Our supreme court has indicated that "[t]he sixteen-point colloquy found in

*State v. Frampton* establishes a sound framework for efficient and complete questioning." *Pedockie*, 2006 UT 28, ¶ 42 (footnote omitted). And "[w]hile a waiver colloquy need not follow this precise script," *State v. Patton*, 2023 UT App 33, ¶ 14, 528 P.3d 1249, "our supreme court has urged and strongly recommended trial courts to employ the full *Frampton* colloquy," *id.* ¶ 14 n.5 (cleaned up).

¶26    Here, after Bridgewaters made his unequivocal request, the trial court was obligated to determine whether he was knowingly and intelligently waiving his right to counsel, preferably by conducting a full *Frampton* colloquy. *See Pedockie*, 2006 UT 28, ¶ 42. The court's repeated references to the *Frampton* colloquy demonstrate that the court was aware of this obligation. But the trial court did not complete the process.[5] At the April 14, 2022 hearing, which the court scheduled in order to perform the *Frampton* colloquy, the court's inquiry fell far short of what was required.[6] After explaining the purpose of the *Frampton* colloquy,

---

5. The State asserts that Bridgewaters has not produced an adequate record on appeal because various hearing transcripts were not requested and included in the appellate record. As indicated in footnote 2 above, however, the appellate record contains the transcripts of the only hearings during which Bridgewaters requested to proceed pro se. The record is therefore sufficient for us to determine that the court erred in not fulfilling its duty to determine if Bridgewaters's waiver was valid.

6. The State emphasizes that the court had apparently engaged in a *Frampton* colloquy with Bridgewaters previously. But again, as reflected in footnote 2 above, the previous colloquy to which the court referred was not a full *Frampton* colloquy. And, more importantly, the result of that colloquy was not a finding that Bridgewaters could not knowingly and intelligently waive the right to counsel. Rather, after that prior colloquy, the court allowed Bridgewaters to proceed pro se—at least for a time—by ordering his then-current counsel to instead assume the role of standby counsel.

the court asked Bridgewaters the single question of why he thought he would be better off handling the matter on his own. When Bridgewaters asserted his innocence and said he felt more comfortable representing himself than proceeding with counsel, the court replied that someone who is innocent needs the assistance of counsel. The court then said, "And you're asking to go forward without an attorney. Does that make any sense?" Bridgewaters replied, "I mean, it does. Absolutely." And the court responded, "To the [c]ourt, it does not, and I will not allow it." This exchange was inadequate to determine the validity of Bridgewaters's waiver. Moreover, the court made no specific findings that Bridgewaters's waiver was not knowing and intelligent. Instead, it denied Bridgewaters's request because the request did not "make any sense" to the court.[7]

¶27 One way to interpret the court's April 8, 2022 declaration that proceeding without an attorney did not "make any sense" is to construe it—particularly in light of the court's statements at the March 29, 2022 hearing—as a determination that no defendant, including Bridgewaters, could ever intelligently waive the right to counsel. At the March 29, 2022 hearing, the court expressed its categorical view that proceeding without counsel is "unwise and that anyone . . . would agree that it's unwise." It then asked, "So how could that be intelligent . . . ?" And it further stated that it did not know whether "the [*Frampton*] colloquy really helps [in] mak[ing] a finding on that point." Against that backdrop, the court then said at the April 14, 2022 hearing that Bridgewaters's

---

7. The trial court also denied Bridgewaters's request because it found that Bridgewaters was using his request for self-representation as a "mechanism for delaying the proceeding." The State contends that "by weaponizing his right to delay trial, [Bridgewaters] failed to show that he could knowingly and intelligently waive his right to counsel." We disagree that dilatory conduct, standing alone, evidences an inability to knowingly and intelligently waive the right to counsel. We therefore do not address this basis for the court's ruling in this part of our analysis; we address it in Part II of our analysis.

waiver of the right to counsel did not "make any sense" because Bridgewaters claimed innocence and a defendant claiming innocence "is exactly the person who needs the help of a lawyer, who's trained, [who] knows all the rules and the process."

¶28 To the extent that the court's denial of Bridgewaters's request to proceed pro se was based on a determination that no defendant can ever intelligently waive the right to counsel because any intelligent person would understand that criminal defendants—especially those who maintain their factual innocence—are worse off without the help of an attorney, the court misunderstood and misapplied the law. "Consideration of the defendant's best interests is not relevant to the determination of whether or not a knowing and intelligent waiver has been made." *State v. Bakalov*, 849 P.2d 629, 633 (Utah Ct. App. 1993), *aff'd in part, vacated in part*, 862 P.2d 1354 (Utah 1993) (per curiam). Rather, the standard "is whether the defendant, with adequate intelligence and knowledge about the potential ramifications, voluntarily chooses self-representation." *Id.*; *see also Faretta v. California*, 422 U.S. 806, 834 (1975) ("It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly.").

¶29 Our caselaw is clear that the preferred course when a defendant validly waives the right to counsel but the court "harbors serious reservations about the ability of [the] defendant[] to effectively [self-]represent" is for the court to exercise its discretion and appoint standby counsel "to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Bakalov*, 849 P.2d at 637 (cleaned up). The court did not take this approach. Instead, it denied Bridgewaters the right to self-representation without making specific findings as to whether his invocation of the right was valid. This was error.

¶30 In sum, the trial court (1) did not conduct an adequate *Frampton* colloquy; (2) apparently determined, mistakenly, that Bridgewaters's waiver of the right to counsel was not intelligent because the assistance of counsel is so obviously in a defendant's best interest that its waiver can never be an intelligent choice; and (3) denied Bridgewaters's request to proceed pro se without making the specific required findings regarding whether his choice to represent himself was knowing and intelligent.

¶31 The trial court in *State v. Bakalov*, 849 P.2d 629 (Utah Ct. App. 1993), *aff'd in part, vacated in part*, 862 P.2d 1354 (Utah 1993) (per curiam), made the same mistakes. Specifically, like the trial court here, the trial court in *Bakalov* did not conduct an adequate "colloquy with [the defendant] informing him of the potential consequences of his decision." *Id.* at 636. Additionally, "although the court ultimately found that [the defendant] would not be able to knowingly and intelligently waive his right to counsel, the underlying factual findings indicate[d] that the court reached this conclusion through an approach analogous to the paternalistic best interest standard" we have disavowed. *Id.* (cleaned up). And the record in *Bakalov*, as here, was "devoid of specific findings [that] relate[d] to whether [the defendant's] choice to represent himself was intelligent and knowing." *Id.*

¶32 Because the circumstances here mirror those in *Bakalov* in every relevant respect, we apply the same remedy here as was ultimately applied there:

> The case is reversed and remanded for a new trial at which [Bridgewaters] may exercise his constitutional right to represent himself if he voluntarily, knowingly, and intelligently chooses to do so. The trial court is directed to conduct a colloquy on the record between the court and [Bridgewaters] to insure that he understands the risks of self-representation and thereby waives his constitutional right to assistance of counsel. The court is also [encouraged] to appoint standby

counsel to preserve [Bridgewaters's] right to self-representation and to preclude subsequent claims of lack of waiver or ineffective assistance of counsel.

*State v. Bakalov*, 862 P.2d 1354, 1355 (Utah 1993) (per curiam).[8]

---

8. In *State v. Pedockie*, 2006 UT 28, 137 P.3d 716, the supreme court clarified, "regarding appellate review in cases involving waiver of the right to counsel," that, with or without a *Frampton* colloquy on the record, "a reviewing court should review the record de novo to determine whether the defendant knowingly and intelligently waived [the] right to counsel." *Id.* ¶¶ 42–45. However, *Pedockie* appears focused on cases involving "the almost inevitable challenge to the waiver [of the right to counsel] by [a] defendant who *proceeds* pro se and is subsequently convicted," *id.* ¶ 42 (emphasis added) (cleaned up); *see also id.* ¶ 45, not on cases such as this one, where the defendant is *denied* the right to proceed pro se. In cases where the defendant proceeds pro se, there is typically a trial court finding that the defendant, either expressly or through conduct, knowingly and intelligently waived the right to counsel. Thus, while the appellate court's review of that determination is de novo, it is not made in the first instance. *See generally Richmond v. Bateman*, 2024 UT App 103, ¶ 31, 554 P.3d 341 ("We are mindful that we are a court of review, not of first view." (cleaned up)). *Bakalov*, on the other hand, is unique in that it appears to be the only reported Utah case addressing a defendant's challenge to the trial court's *denial* of the right to proceed pro se. Given *Bakalov*'s and *Pedockie*'s contrasting postures as well as *Bakalov*'s explicit rationale regarding the difficulty of retrospective recreation of the circumstances existing prior to trial, *see State v. Bakalov*, 862 P.2d 1354, 1355 (Utah 1993) (per curiam) ("The circumstances existing prior to [the defendant's] trial cannot be recreated. The trial court never advised [the defendant] of the dangers and disadvantages of self-representation and thus could not then or now assess his responses to that advice." (cleaned up)), we are not convinced that

(continued…)

¶33 Before remand, however, we address the trial court's second basis for denying Bridgewaters's request to represent himself at trial.

## II. Forfeiture and Waiver of the Right to Self-representation

¶34 We next consider the trial court's other basis for denying Bridgewaters's request to represent himself at trial—namely, its finding that Bridgewaters was using the request for self-representation as a "mechanism for delaying the proceeding." We view the court's reliance on this rationale as a determination that Bridgewaters, through his conduct, relinquished his right to represent himself.

¶35 We begin our review of this determination by outlining the law on when a defendant loses the right to counsel through conduct. We then apply that law to the right of self-representation. Finally, we analyze whether Bridgewaters gave up the right of self-representation through his conduct. We conclude that he did not.

¶36 Independent of true waiver, there are two other "methods pursuant to which a defendant may give up [the] constitutional right to the assistance of counsel: . . . forfeiture[] and waiver by conduct." *State v. Pedockie*, 2006 UT 28, ¶ 27, 137 P.3d 716.

¶37 First, "forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." *Id.* ¶ 31 (cleaned up). "A defendant may be deemed to have forfeited [the] right to counsel when [the defendant] engages in extremely dilatory

---

*Pedockie*'s mandate for an appellate determination—based on a de novo review of the record—as to whether the defendant's invocation of the right to self-representation was knowing and intelligent is applicable here. Instead, we believe that reversal is merited solely on the basis of the trial court's failure to make the required findings in the first instance.

conduct or abusive behavior, such as physically assaulting counsel." *Id.* ¶ 32 (cleaned up). And "[w]hen circumstances are egregious enough to constitute forfeiture, a court need not determine whether a defendant understands the risks of self-representation or warn [the defendant] that [the defendant] will lose [the] right to counsel." *Id.* "But because of [forfeiture's] drastic nature, a defendant must engage in extreme conduct before forfeiture may be imposed." *Id.*

¶38 Second, "waiver by conduct, often referred to as implied waiver," applies "once a defendant has been warned that [the defendant] will lose [the defendant's] attorney if [the defendant] engages in dilatory tactics," such that "any misconduct thereafter may be treated as an implied request to proceed pro se and thus, as a waiver of the right to counsel." *Id.* ¶ 33 (cleaned up). Our supreme court has explained,

> The conduct required to give rise to an implied waiver does not have to be as extreme as that required for forfeiture. And unlike the situation in cases of true waiver, a defendant need not intend to relinquish the right to counsel. But the defendant must have been warned that continuation of the unacceptable conduct will result in a waiver of the right to counsel.

*Id.* (cleaned up).

¶39 We acknowledge that the foregoing descriptions of forfeiture and waiver by conduct were made within the context of a defendant giving up the right to counsel, rather than in the context of a defendant giving up the right to proceed pro se. Nevertheless, these principles apply in the latter context as well. The United States Supreme Court and Utah's appellate courts have consistently recognized that the right to represent oneself is an implied right connected with the right to counsel. *See Faretta v. California*, 422 U.S. 806, 814 (1975) ("The Sixth Amendment right to the assistance of counsel implicitly embodies a correlative right

to dispense with a lawyer's help." (cleaned up)); *State v. Patton*, 2023 UT App 33, ¶ 12, 528 P.3d 1249 ("The right to be represented by counsel . . . also implicitly carries with it the right of self-representation." (cleaned up)). Because these rights originate and operate together, the protections and presumptions applicable to the right to counsel also generally apply to the right to represent oneself. *See State v. Bakalov*, 849 P.2d 629, 632 (Utah Ct. App. 1993) ("[T]his right [to self-representation] must be protected *in harmony with* the Sixth Amendment's guarantee to the assistance of counsel." (emphasis added)), *aff'd in part, vacated in part*, 862 P.2d 1354 (Utah 1993) (per curiam). Accordingly, the protections against giving up the right to counsel through conduct apply to giving up the right to proceed pro se.

¶40    Nevertheless, we note that there is a practical difference in the invocation of these rights. The right to counsel applies automatically, without invocation, "at all critical stages of a criminal proceeding," *State v. Jamieson*, 2021 UT App 3, ¶ 31, 480 P.3d 363, particularly where a defendant faces imprisonment, *see State v. Von Ferguson*, 2007 UT 1, ¶¶ 14–29, 169 P.3d 423. In contrast, the right to represent oneself is accessed, as described above, through a clear and unequivocal request. This difference matters. Because a defendant accesses the right to self-representation only after a valid waiver of the right to counsel, a court may properly find forfeiture or waiver by conduct of the right to self-representation only after the court has, at some prior point, determined that the defendant had validly waived the right to counsel and allowed the defendant to proceed pro se.

¶41    In this case, the court had previously permitted Bridgewaters to proceed pro se by ordering his then-attorney to serve as standby counsel. After this, however, that standby counsel was conflicted out, and a new attorney was appointed with no indication that the new attorney would be acting as standby counsel. Indeed, the new attorney acted in the capacity of counsel at the hearing on March 29, 2022, by questioning witnesses, presenting arguments, responding to objections and counterarguments, and discussing jury instructions and voir dire.

Thus, Bridgewaters was not proceeding pro se at that hearing or at the hearing on April 14, 2022. But because the court had previously allowed Bridgewaters to proceed pro se, we will assess whether forfeiture or waiver by conduct of the right of self-representation applies.

¶42    For Bridgewaters to have forfeited his right to proceed pro se, he would have had to engage in "extremely dilatory conduct or abusive behavior." *State v. Pedockie*, 2006 UT 28, ¶ 32, 137 P.3d 716 (cleaned up). The State has not asserted that Bridgewaters engaged in conduct so extreme that his right to represent himself was forfeited, nor do we believe that he did. Therefore, Bridgewaters did not forfeit his right to represent himself.

¶43    The trial court did find, however, that Bridgewaters was using his request to proceed pro se as a "mechanism of delay," and it determined that it was "not going to allow that to happen." As noted, this finding and rationale were, in effect, a determination that Bridgewaters impliedly waived his right to represent himself by his conduct. But the requirements for waiver by conduct are not met here. Before a defendant's waiver can be implied, "the defendant must have been warned that continuation of the unacceptable conduct will result in a waiver of the right." *Id.* ¶ 33.

¶44    At the hearing on July 8, 2021, the court noted that Bridgewaters had gone through several attorneys due to a history of him becoming "very anxious . . . on the eve of trial," prompting him to switch counsel. Then, at the April 14, 2022 hearing, the court said, "There's a pattern of delay, and I'm not going to allow you to once again change counsel, which would cause further delay to the case. You're not allowed to prejudice the case." But in neither situation did the trial court *warn* Bridgewaters that continuing that behavior would result in a waiver of his right to proceed pro se. Moreover, when the court expressed its concern about delay on April 14, 2022, Bridgewaters stated that he was prepared to proceed with trial as scheduled. Accordingly, waiver by conduct does not apply here because the court did not warn

Bridgewaters and then rely on the continuation of problematic behavior to determine that Bridgewaters had impliedly waived his right to represent himself.

¶45 We do not mean to suggest that a trial court is at the mercy of a defendant's repeated flipflops between wanting to be represented by counsel and wanting to proceed pro se. We simply repeat that for a defendant to be deemed to have waived either of those rights through dilatory conduct, "the defendant must [first] have been warned that continuation of the unacceptable conduct will result in a waiver." *Id.* At the hearing on April 14, 2022, when Bridgewaters asked to represent himself at trial (which was then scheduled for nearly six months away), the court could have warned Bridgewaters that if he changed his mind and again requested to be represented by counsel, he would not be allowed another chance at self-representation. Likewise, the court could have warned him that it would not reschedule the trial if Bridgewaters changed his mind and again requested counsel. But because the court issued no warning before April 14, 2022, it could not restrict Bridgewaters's exercise of the right to self-representation on the basis of dilatory conduct on that day. *See id.*

CONCLUSION

¶46 After Bridgewaters clearly and unequivocally invoked his right to self-representation, the trial court made no specific findings as to whether his invocation of that right was knowing and intelligent and instead required him to be represented at trial. This was error. The court's determination that Bridgewaters waived his right to self-representation through dilatory conduct was also error where Bridgewaters received no warning that such conduct would constitute a waiver. Accordingly, we vacate Bridgewaters's convictions and remand this matter for a new trial—or such other proceedings as may be appropriate—consistent with our directions as stated above.

_____